IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) ) | CASE NO. 1:07 CV 2291 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| ACE AKRON/CLEVELAND | ) | |
| ENTERPRISES, INC., *et al.*, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

## Introduction

Before me by referral[1] in this diversity action are motions for summary judgment filed by the Estate of Kevin Williams (Estate),[2] a named defendant, and National City Capital Corporation (National City),[3] an interpleaded defendant. The present motions involve a dispute about whether National City is entitled to recover a portion of the proceeds from a key man life insurance policy obtained by the Estate's decedent at the time National City invested in the decedent's business. For the reasons that follow, I recommend finding that neither party receive summary judgment because the record shows that a triable issue of fact remains.

---

[1] ECF # 74.

[2] ECF # 71.

[3] ECF # 70.

# Facts

**A.     Relevant underlying facts**

As related by both the Estate and National City, the fundamental underlying facts are not in dispute.   In 1995, Kevin Williams owned 100 percent of the stock in an Ohio corporation known as "Ace Akron/Cleveland Enterprises Incorporated" (ACE Ohio).[4]  ACE Ohio, in turn, owned and operated 23 Domino's Pizza franchises in greater Cleveland.[5]

Williams, however, in August 1995 restructured his business by forming a new entity, a Delaware limited liability company known as "Akron Cleveland Enterprises LLC" (ACE Delaware).[6]   Williams  personally  held  no  interest  in  the  new  venture,  but  ACE Ohio – wholly owned by Williams – contributed the Domino's franchises to become the majority member of ACE Delaware receiving 75 percent ownership[7] while new investors National City and Northcoast Fund (Northcoast) contributed cash to become minority members and owned the remainder.[8]

As part of this restructuring, on August 25, 1995, both Northcoast and National City simultaneously  executed  the  First  Amended  and  Restated  Limited  Liability  Company

---

[4] *See*, ECF # 71 at 2, citing to ACE Ohio's 1996 federal tax return.

[5] *Id*.

[6] *Id*. at 3.

[7] *Id*.  Williams and ACE Ohio were original members of the Delaware entity, but Williams withdrew as part of the deal by which the new members were admitted.

[8] *Id*., citing ACE Delaware's 1995 partnership return.  Northcoast was a 13.5 percent owner while National City held the remaining 11.5 percent.

Agreement for ACE Delaware[9] along with a Unit Purchase Agreement.[10]  The Unit Purchase Agreement in particular required ACE Delaware to deliver, as a condition of closing, to National City on the initial closing date key man life insurance on Williams' life in an amount equal to the new investors' total investment in ACE Delaware – $1.5 million[11] – with ACE Delaware to be the sole named beneficiary of such insurance.[12]  It further required that proceeds from such insurance be used first to redeem the Class B LLC membership units acquired by Northcoast and National City under that agreement.[13]

The policy in dispute here, however, issued on October 25, 1995 well after the apparent closing,[14] had the typewritten named beneficiary identified as "Akron Cleveland Enterprises, Inc., its successors or assigns doing business as Domino's Pizza,"[15] a nonexistent entity,[16] not "Akron Cleveland Enterprises LLC" – *i.e.*, ACE Delaware.[17]

---

[9] *Id.*, Ex. 6.

[10] *Id.*, Ex. 8.

[11] ECF # 70 at 4. National City's portion of this was $ 690,000.

[12] ECF # 69 (McCuaig Declaration), Ex. 2 (Unit Purchase Agreement) at 5.1(iii).

[13] *Id.*, at 6.8.

[14] ACE Delaware's LLC agreement is dated August 25, 2005.  ECF # 69, Ex. 1 at 1. The unit purchase agreement is undated, but is represented, as noted earlier, to have been executed simultaneously with the amended LLC agreement.

[15] ECF # 1, Ex. 1 at 8.

[16] *See*, ECF # 71 at 2.  The designated name given on the policy lacks the prefix "Ace" needed to indicate ACE Ohio, and uses the suffix "Inc." rather than "LLC" which would correctly designate ACE Delaware.

[17] ECF # 70 at 3, quoting ECF # 15 (amended complaint) at ¶ 12 (emphasis added).

In 1997, Williams died.[18]  Later that same year, the insurer, Massachusetts Mutual, received a claim on the policy proceeds from ACE Delaware, and in 1998, an additional claim from Domino's Pizza.[19]  Unable to obtain additional information from ACE Delaware on its claim, and after Domino's withdrew its claim, Massachusetts Mutual could not determine the entity entitled to receive the proceeds from the policy.[20]

Consequently, it filed the present interpleader action against ACE Ohio, ACE Delaware and the Estate,[21] later adding National City and Northcoast.[22]  Massachusetts Mutual moved for,[23] and was granted,[24] an order of interpleader permitting it to deposit $1,940,000.00 with the Court.  Northcoast has not appeared in this matter,[25] but National City and the Estate have filed the present motions setting forth their respective claims.

**B.    The Estate's position**

Essentially, the Estate argues that National City has not established its right to receive summary judgment in its favor rather than making a case that the Estate is itself entitled to

---

[18] ECF # 70 at 7, citing ECF # 15 at ¶ 24.

[19] ECF # 15 at ¶¶ 37-40.

[20] *Id*. at ¶¶ 37-44.

[21] ECF ## 1, 15.

[22] ECF # 49.

[23] ECF # 43.

[24] ECF # 48. The amount in excess of the $1.5 million policy benefit reflects interest earned since the benefit became payable.

[25] *See*, ECF # 70 at 4.

summary judgment.  Basically, it contends that although it is "plausible" that the policy at issue here is the key man insurance referred to in the ACE Delaware Unit Purchase Agreement that would benefit National City, it also argues that it is "just as plausible" that a second key man policy obtained by Williams from another insurer in the amount of $2 million, and now paid to other claimants, was intended to meet the requirement of the ACE Delaware agreement.[26]

Moreover, the Estate maintains that it is "equally plausible" that Williams correctly and deliberately named ACE Ohio as the beneficiary of the present policy – the position that would benefit the Estate since ACE Ohio no longer exists and Williams was its sole shareholder.  In that regard, the Estate asserts that Williams remained personally liable to Domino's for ACE Ohio's franchise obligations, making any Domino's claims on ACE Ohio claims against Williams and the Estate.  Thus, obtaining a key man policy benefitting ACE Ohio would have protected Williams and his estate from claims by Domino's and so it "makes logical business sense" that Williams would have deliberately purchased such a policy.[27]  In addition, the Estate contends that since ACE Ohio – Akron-Cleveland Enterprises, Inc. – was the only ACE entity actually in existence at the time this insurance was acquired (ACE Delaware had not yet come into existence), Williams' use of the "Inc." suffix when designating the beneficiary was proper and intentional.[28]

---

[26] ECF # 71 at 9.

[27] *Id*. at 11-12.

[28] *Id*. at 9-11.

C.     **National City's position**

National City claims that since the "undisputed" intent of Kevin Williams was to name ACE Delaware as the beneficiary of this policy,[29] and that since, under Ohio law, the intent of the insured is to control when the identity of a beneficiary is ambiguous on the face of the policy and extrinsic evidence can clarify the insured's true intent,[30] it is entitled to summary judgment in its favor.

In support of this position, it relies heavily on the facts that:  (1) the unit purchase agreement by which National City and Northcoast made their investment required ACE Delaware to have key man life insurance on Williams as a condition of the investment, and (2) that the insurance policy at issue here was for the same amount as the capital contributions of National City and Northcoast.[31]  National City contends that recognizing it as the intended beneficiary, which would preclude the unjust enrichment of the Estate,[32] can, therefore, be accomplished here by imposing a constructive trust on the proceeds for its

---

[29] ECF # 70 at 8.  Although National City here states that "[t]he intent of the insured is not in dispute here," *id*., as noted, the Estate does dispute that Williams' intent as to the beneficiary of the policy can be known with certainty.

[30] *Id*. at 9-10.

[31] *Id.* at 11.

[32] *Id*. at 14.

benefit[33] or by determining that a mistake – either unilateral by Williams or mutual – was made in identifying the beneficiary, and then reforming the contract to correct the mistake.[34]

National City also notes that if this Court should be unable to resolve any ambiguity in the policy over the identity of the beneficiary, it should not simply award the proceeds to the Estate but, instead, find that the question of the proper beneficiary is a triable issue of fact, which precludes summary judgment.[35]

## Analysis

### 1.    Standard of review – summary judgment

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[36]  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[37]

---

[33] *Id*. at 12.

[34] *Id*. at 13-14.

[35] ECF # 72 at 6.

[36] Fed. R. Civ. P. 56(c).

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[38]
Determination of whether a factual issue is "genuine" requires consideration of the applicable
evidentiary standards.[39]  The court will view the summary judgment motion "in the light most
favorable to the party opposing the motion."[40]

   Summary judgment should be granted if a party who bears the burden of proof at trial
does not establish an essential element of his case.[41]  Accordingly, "[t]he mere existence of
a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be
evidence on which the jury could reasonably find for the plaintiff."[42]  Moreover, if the
evidence presented is "merely colorable" and not "significantly probative," the court may
decide the legal issue and grant summary judgment.[43]

   Once the moving party has satisfied its burden of proof, the burden then shifts to the
nonmover.[44]  The nonmoving party may not simply rely on its pleadings, but must "produce

---

[38] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[39] *Id.* at 252.

[40] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[41] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir.2005) (citing *Celotex*, 477 U.S. at 322).

[42] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir.2004) (quoting *Anderson*, 477 U.S. at 248-49).

[43] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[44] *Id.* at 256.

evidence that results in a conflict of material fact to be solved by a jury."[45]  "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[46]

In sum, proper summary judgment analysis entails the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[47]

**2.      A triable issue of fact remains as to Kevin Williams' intent in designating a beneficiary in the policy at issue.**

As discussed above, National City's motion for summary judgment rests on the premise that the policy at issue here is unmistakably the policy contemplated by the unit purchase agreement, and so this Court should simply give effect to the intent of the insured, as reflected in the agreement, and resolve any ambiguity in favor of National City.  My recommended finding, however, is essentially that because, on this record, there is no evidence, beyond the similarity in the amount, that the policy at issue here was ever actually used by the parties in the way specified by the unit purchase agreement, there is a genuine issue of material fact for a jury as to whether this policy is, in fact, the policy contemplated by the agreement and so genuine issue of material fact as to what the insured's intent was in designating the beneficiary of this policy.

---

[45] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir.1995).

[46] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[47] *Anderson*, 477 U.S. at 250.

In that regard, I note initially, as is more fully described above, that the unit purchase agreement by which National City acquired its interest in ACE Delaware, and which further specified that ACE Delaware should be the beneficiary of key man life insurance on Williams for the purpose of insuring National City's investment, is plain that such key man insurance shall be delivered to National City by ACE Delaware on the initial closing date.[48] Here, there is no evidence in this record that this policy was ever delivered to National City at that or any other time by ACE Delaware in conformity with its direct contractual obligation to provide key man insurance on Williams and deliver the policy to National City.[49]

The fact that this transaction clearly closed, and National City acquired its interest, all according to the terms of the unit purchase agreement without this policy – either in the form of the application for the policy or as a certificate of its issuance – ever being tendered to National City by ACE Delaware at the initial closing or at any later time precludes finding on summary judgment that this policy is undeniably or obviously the policy referred to in the unit purchase agreement.  Plainly, taking the facts of record and all reasonable inferences that

---

[48] The agreement elsewhere states that such a policy shall be obtained by ACE Delaware within 15 days of closing and that ACE Delaware shall "promptly deliver[]" certificates of the policy to National City upon their request.  Inasmuch as the policy was not issued until October, there is no evidence of the policy certificate being requested by National City at that time, or of it being delivered to National City by ACE Delaware.

[49] Indeed, although the Estate's brief contains a representation that this policy was applied for two weeks before ACE Delaware was organized, ECF # 71 at 14, there is no independent evidence for that in the record.  Moreover, there is no evidence of record that the mere application was ever tendered to National City at the initial closing and thus deemed sufficient to satisfy the requirement the unit purchase agreement.

can be drawn therefrom in the light most favorable to the Estate, there is an open question of fact as to whether this policy is the one intended to satisfy the explicit requirements of the unit purchase agreement when it has not been shown by this record that National City ever received the policy, or its application form, from ACE Delaware at the initial closing as mandated, or ever later requested a certificate of this policy, as also provided for in the agreement.

National City's argument that this Court, when faced with a policy ambiguity, must look to the intent of the insured while correct as a matter of law does not here compel the result it seeks but may actually suggest a contrary finding.  Specifically, there is no dispute whatsoever on this record that Kevin Williams' intent was to close the transaction with National City and so receive new capital for his business.

However, if Williams succeeded in effectuating this intent by (1) closing the transaction set forth in the purchase agreement (2) without any party to the transaction ever taking any action after the policy was prepared to (3) demonstrate that they regarded this policy as the one required in the agreement, it would be hard to conclude that Williams' obvious intent in naming a beneficiary for this policy was necessarily to name ACE Delaware as such solely because that was required by the agreement.

Again, this conclusion should not prejudge or predetermine what evidence may be presented at trial or what a jury may conclude from that evidence.  Rather, I simply recommend finding on the record before me that a genuine issue of material fact remains as to the identity of the intended beneficiary of this policy because there is a genuine issue of

material fact as to whether this policy is, in fact, the one required by the purchase agreement based on the actions of the parties.

Absent such a clear direct connection between this policy and the agreement, all other theories or conjectures as to which entity may have been in Williams' mind when designating the beneficiary of the policy, or the reasons for preferring one hypothesis to another, are properly jury argument and not the basis for a grant of summary judgment.[50]

## Conclusion

Accordingly, I, therefore, recommend denying both motions for summary judgment for the reasons stated above.

Dated:  October 28, 2009                                s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[51]

---

[50] This would include, on National City's side, the declaration by Todd McCuaig pointing to the fact that the policy is for the same amount as the new investments and that it is his "understanding" that the policy at issue here was obtained for the purpose of complying with the terms of the unit purchase agreement, ECF # 69 at ¶ 13. And with respect to the Estate, it would include its hypothesis that Williams had a reason to name ACE Ohio as the beneficiary so as to insure against claims against that entity that would fall to the Estate.

[51] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-12-